UNITED STATES of America, Appellee,

v.

William Joseph GALLO, Appellant.

No. 85–5133.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 8, 1985.

Decided Feb. 6, 1986.

Jonathan E. Turak, Moundsville, W. Va. (Gold, Khourey & Turak, Moundsville, W. Va., on brief), for appellant.

Martin P. Sheehan, Wheeling, W. Va. (William A. Kolibash, U.S. Atty., David A. Jividen, Asst. U.S. Atty., Wheeling, W. Va., Beth Raies, Third Year Law Student, on brief), for appellee.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

**HARRISON L. WINTER, Chief Judge:**

William Joseph Gallo was convicted of three charges of violating 18 U.S.C. § 1952(a)(3) (Travel Act) and one charge of violating 21 U.S.C. § 846 (conspiracy to possess cocaine with intent to distribute) with regard to a drug transaction on or about February 15, 1984, involving the sale of one-half ounce of cocaine to David Barrett, an undercover informant. Gallo received consecutive sentences on each conviction, and he appeals.

Before us, Gallo contends that the district court improperly admitted testimony of Ricky Ball concerning drug transactions between Gallo and Ball in 1980–81, that the evidence was legally insufficient to convict him of violations of the Travel Act and of the conspiracy count, and that the district court committed reversible error in failing to give an adequate instruction on the elements of the Travel Act. While we see no merit in the evidentiary contentions and hence affirm the judgment of conviction of conspiracy, we perceive reversible error in the failure adequately to instruct on the charges of violating the Travel Act. We affirm in part and reverse in part, granting a new trial on the Travel Act charges.

## I.

David Barrett, the undercover informant, sought to obtain cocaine from Ricky Ball, who represented that he had a source. On February 14, 1984, Ball drove Barrett from Weirton, West Virginia, to Steubenville, Ohio, and introduced him to Gallo. Gallo said that the cocaine had not yet arrived, but he offered to drive them to one of his several sources to obtain the drug. Because of a previous commitment, Ball could not accept the offer, and Gallo accordingly promised to obtain the cocaine and call Ball to arrange delivery.

The next day, Gallo telephoned Ball to say that the transaction could proceed. Ball was unable to make the trip, but Barrett then traveled alone from West Virginia to Ohio, where he met Gallo and purchased one-half ounce of cocaine for $1,300.00. In making the sale, Gallo praised the quality of the cocaine and told Barrett that if he was satisfied, more cocaine was available. After the transaction, Gallo called Ball to inquire whether the cocaine was satisfactory and to indicate his willingness to supply more. At all times, Barrett wore a tape recorder and his telephone was tapped. All of his conversations with Ball and Gallo were recorded.

Shortly after the February 15, 1984 transactions, Gallo was arrested on an unrelated charge, so that no further transactions were carried on.

Count 1 of the indictment charged Gallo with aiding and abetting the February 14 travel from West Virginia to Ohio, and Counts 2 and 3 charged aiding and abetting Barrett's trip from West Virginia to Ohio, and return, respectively. Count 4 of the indictment charged Gallo with conspiring with persons known and unknown to possess cocaine with intent to distribute.

## II.

Over Gallo's objection, the district court permitted Ball to testify about drug transactions in 1980–81 between Gallo and Ball. It was the government's theory that the evidence was offered to show (a) predisposition to distribute narcotics, rebutting a possible entrapment defense[1] (b) scheme and intent under Fed. Evidence Rule 404(b), and (c) an on-going business scheme and enterprise to distribute narcotics.

We think that the evidence was admissible under Rule 404(b) to prove intent, scheme, opportunity, or a business enterprise. *See United States v. Masters,* 622 F.2d 83 (4 Cir.1980). We see no merit in Gallo's suggestion that the government's failure to specify one or more of these purposes in offering the evidence rendered it inadmissible by precluding the district court from balancing its probative value against the danger of undue prejudice to Gallo. The record reflects that, without

1. Despite the government's anticipation, defendant did not assert entrapment as a defense.

mentioning Fed. Evidence Rule 403, the district court did undertake the requisite balancing. Once admitted, the evidence is deemed admissible on appeal if it is admissible under Rule 404(b) on any theory. *See United States v. Green*, 648 F.2d 587 (9 Cir.1981); *United States v. Provenzano*, 620 F.2d 985 (3 Cir.1980); *United States v. Gocke*, 507 F.2d 820 (8 Cir.1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975).

### III.

■ To support a conviction under the Travel Act, 18 U.S.C. § 1952, the government must prove three elements: (a) interstate travel; (b) intent to promote unlawful activity, i.e., a business enterprise; and, (c) performance or attempted performance of an unlawful act. *See, e.g., United States v. Polowichak*, 783 F.2d 410 (4 Cir.1986). Gallo's contention regarding the legal sufficiency of the evidence to convict him of violating the Travel Act centers on the government's proof of specific intent to promote unlawful activity. Section 1952(b) defines "unlawful activity" to mean "any business enterprise involving ... narcotics or controlled substances (as defined in section 102(6) of the Controlled Substance Act) ... in violation of the laws ... of the United States ..."

■ As we later discuss, Gallo's Travel Act convictions must be set aside because the district court failed adequately to instruct the jury with regard to intent to promote unlawful activity. Nonetheless, we think that the evidence was legally sufficient to sustain the convictions had the jury been properly instructed and returned verdicts of guilty.[2] The government's evidence showed more than an isolated, sporadic transaction. *Cf. United States v. Corbin*, 662 F.2d 1066 (4 Cir.1981). In addition to the testimony of Ball regarding drug transactions in 1980–81, the govern-

ment introduced significant other evidence of an ongoing drug enterprise. Gallo was taped as identifying three sources of cocaine available to him in East Liverpool, Ohio, Wintersville, Ohio and the Ohio trailer park on Route 213. Gallo was also taped as telling Barrett to contact him if Barrett wanted more cocaine. Finally, Ball testified that, after the sale by Gallo to Barrett, Gallo telephoned Ball to say that if Barrett wanted more cocaine, Gallo would be able to get it for him. Manifestly, this evidence, if believed, amply demonstrated that the Gallo-Barrett transaction was not a sporadic sale, but rather part of a continuing enterprise.

■ We think also that the evidence was legally sufficient to permit the jury to find Gallo guilty of conspiracy to possess cocaine with intent to distribute, a crime essentially consisting of an agreement between two or more persons to violate the narcotics laws. The evidence showed at least an agreement between Gallo and Ball to supply cocaine to Barrett and continued cooperation during and after the transaction. The evidence also showed that Gallo participated in a network to distribute cocaine, constituting an agreement between him and unknown other persons to accomplish that objective.

### IV.

■ As we have recently reaffirmed in *United States v. Polowichak*, 783 F.2d 410 (4 Cir.1986), this circuit holds that a defendant is entitled to an instruction as to the elements of the offense charged in the indictment. One element of a Travel Act violation is proof of specific intent to promote "unlawful activity", defined for relevant purposes, as any illegal business enterprise involving any illegal business enterprise involving narcotics or controlled substances. As we held in *United States v. Corbin*, 662 F.2d 1066 (4 Cir.1981), the term "business enter-

---

**2.** Despite reversal, the legal sufficiency of the evidence is an issue before us because we must

consider it in deciding whether to grant a new trial.

prise" means a continuous course of conduct, rather than a sporadic, casual, individual or isolated violation.

Gallo requested an instruction on the elements of a business enterprise proscribed by the Travel Act.[3] His request was refused, and he excepted to the charge for failure to include an adequate definition of "unlawful activity in terms of a business enterprise."

Our examination of the charge to the jury fails to uncover any definition of "unlawful activity." The district court did read each of the three Travel Act counts to the jury, and it summarized them, saying:

> In Counts, One, Two and Three of the indictment, it is charged that the defendant did aid and abet and cause travel by an individual in interstate commerce with the intent to promote, manage, establish and carry on an unlawful activity.

This was followed by a detailed instruction on aiding and abetting. Then the district court read to the jury 18 U.S.C. § 1952(a)(3) and identified the three essential elements that must be proved beyond a reasonable doubt in order to establish the charged offenses: (a) defendant aided and abetted interstate travel by certain individuals on or about the time and between the places charged in the indictment, (b) defendant aided and abetted such travel with the specific intent "to promote, manage, establish or to carry on an 'unlawful activity,'" and (c) defendant knowingly and willfully committed an act or aided and abetted another in committing an act "to promote, manage, establish or carry on such 'unlawful activity.'"[4]

Conspicuous in all of these recitations is the absence of any definition of "unlawful activity", despite Gallo's request. We find no definition in the portions of the charge with respect to the Travel Act offenses, and, contrary to the government's suggestion, we find none in the portion of the charge with respect to conspiracy. Thus, we are ineluctably led to the conclusion that there was reversible error. Gallo received less than that to which he was entitled, and although there was evidence from which a jury could find "unlawful activity" within the meaning of § 1952(a)(3), we cannot speculate that the unguided jury relied on this evidence in reaching its verdicts.

AFFIRMED IN PART; REVERSED IN PART AND NEW TRIAL GRANTED.

---

**3.** Citing, *inter alia,* our opinion in *Corbin,* Gallo requested the following instruction:

> The Court further instructs the jury that, in Counts I, II, and III, the defendant is charged with a violation of Title 18, United States Code, Section 1952(a)(3), which is commonly referred to as the Travel Act. This act forbids interstate travel designed to promote or conduct "unlawful activity." Unlawful activity has been defined, for our purposes, as any business enterprise involving narcotics and/or controlled substances. The term "business enterprise" as it is used in this section means a continuous course of conduct, rather than sporadic, casual involvement in proscribed activity. One isolated incident of criminal activity, even though involving interstate commerce, is insufficient to sustain a conviction under this section. There must be evidence of a continuous "business enterprise" and at least one act in interstate commerce in furtherance of that enterprise. As such, the existence of a "business enterprise" is an element of this crime, and unless the government has proven to you beyond a reasonable doubt the existence of a "business enterprise," you must return a verdict of not guilty with respect to Counts I, II and III of the herein indictment.

**4.** Quotation marks around the phrase "unlawful activity" appear in the transcript. The record does not show whether they were supplied at the option of the reporter or at the direction of the district judge.