**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5766

BANDELE M. JONES, a/k/a Dele, a/k/a
Bandele D. Jones, a/k/a Bandele
Monchun Jones,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CR-95-51)

Submitted: January 28, 1997

Decided: February 10, 1997

Before MURNAGHAN and HAMILTON, Circuit Judges,
and PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Barbara H. Allen, James A. McKowen, ALLEN & ALLEN, L.C.,
Charleston, West Virginia, for Appellant. Rebecca A. Betts, United
States Attorney, Monica K. Schwartz, Assistant United States Attor-
ney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bandele Jones appeals his conviction, after a jury trial, of conspiracy to distribute and possess with intent to distribute cocaine base, 21 U.S.C. § 846 (1994) (count 1); aiding and abetting possession with intent to distribute cocaine and cocaine base, 21 U.S.C. § 841(a)(1) (1994) (count 3); aiding and abetting travel in interstate commerce to facilitate unlawful drug activity, 18 U.S.C. § 1952(a)(3) (1994) (count 4); and possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1) (1994) (count 5). He was sentenced to 360 months in prison and five years supervised release. Finding no error, we affirm.

Jones first claims that this court should revisit its prior decisions holding that the disparity in sentencing between cocaine base and powder cocaine offenses is constitutionally permissible. United States v. Fisher, 58 F.3d 96, 98-100 (4th Cir.), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3720 (U.S. Oct. 10, 1995) (No. 95-5923); United States v. Byrnum, 3 F.3d 769, 774-75 (4th Cir. 1993); United States v. Thomas, 900 F.2d 37, 38-40 (4th Cir. 1990). Jones relies on the recommendation of the United States Sentencing Commission that the disparity be eliminated, as well as a statement of President Clinton that "[s]ome adjustment is warranted." However, Congress did not adopt the Sentencing Commission's recommendation to eliminate or reduce the disparity. See United States v. Hayden, 85 F.3d 153, 157-58 (4th Cir. 1996). Therefore, this Court's precedent need not be revisited, and the disparity presents no ground for overturning Jones's sentence.

Jones next contends that his sentence of 360 months is disproportionate to the sentences of his codefendants, who were sentenced to eighty-four months (Angelo White) and thirty-six months (Frank Fazio). The sentencing court need not consider the sentence of a codefendant when imposing sentence. United States v. Foutz, 865 F.2d

2

617 (4th Cir. 1989); United States v. Truelove , 482 F.2d 1361 (4th Cir. 1973). Further, even comparing the sentences of Jones and his codefendants, the differences in the sentences at issue are clearly supported by the record: Jones went to trial, whereas White and Fazio pled guilty and offered substantial assistance to the Government. Further, Jones was more culpable in the conspiracy than were White and Fazio. Finally, to the extent that Jones challenges the district court's refusal to depart downward based on his codefendants' sentences, disparity of sentences among codefendants is not a ground for downward departure absent prosecutorial misconduct, which is not alleged here. United States v. Fonville, 5 F.3d 781 (4th Cir. 1993). See also United States v. Bayerle, 898 F.2d 28 (4th Cir. 1990) (district court's refusal to depart downward is not appealable). Therefore, the district court did not err in imposing Jones's sentence.

Jones next contends that improper statements made by the prosecutor warranted a mistrial. This court reviews the denial of a motion for mistrial for abuse of discretion. Hayden, 83 F.3d at 156. To show an abuse of discretion, the appellant must show prejudice. Id. In assessing improper prosecutorial comments, the court looks to: (1) the degree to which the comments misled the jury and prejudiced the defendant; (2) whether the remarks were isolated or extensive; (3) whether absent the remarks, the evidence established the defendant's guilt; and (4) whether the comments were deliberately made to divert the jury's attention to extraneous matters. United States v. Harrison, 716 F.2d 1050 (4th Cir. 1983).

Jones alleges that during cross examination the prosecutor improperly asked Jones's girlfriend, Trina King, about whether she knew Jones was a drug dealer. Jones contends that the question was inflammatory and prejudicial because the prosecutor knew that King had no first-hand knowledge that Jones was a drug dealer, as evidenced by her grand jury testimony. Jones concedes that the trial court's curative instruction was sound, but contends that because the jury's verdict was based almost completely on the testimony of accomplices, a mistrial was warranted. However, the question was clearly an isolated remark in a two-day trial, and there was extensive evidence of Jones's guilt absent the remark. Further, the district court was in the best position to observe the jury's reaction to the question and to the curative instruction. On this record, Jones cannot establish that the district

3

court abused its discretion in denying the motion. See generally James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993) (discussing abuse of discretion).

Finally, Jones contends that the district court should have granted his motion for a new trial on counts one, three, and four because the evidence was insufficient to support the jury's guilty verdict on these counts. This court reviews a challenge to the sufficiency of the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80 (1942). The court considers both circumstantial and direct evidence, and allows the government the benefit of all reasonable inferences from the facts established to those sought to be established. United States v. Tresvant, 677 F.2d 1018 (4th Cir. 1982). The credibility of witnesses is in the sole province of the jury and is not subject to appellate review. United States v. Saunders, 886 F.2d 56 (4th Cir. 1989).

The evidence at trial established that Jones, Angelo White, James Robinson, and others traveled to New York together from time to time beginning in January 1994; the purpose of these trips was to purchase drugs for resale in West Virginia. The trips were sometimes made in Jones's car. The group sometimes returned to West Virginia together, and sometimes separately, by car, train, or plane. On each of at least five trips, Jones, White, and Robinson purchased one-half kilogram of cocaine base. On several occasions, White traveled to New York on behalf of Robinson and Jones, buying drugs with money supplied by them. If any of the participants ran out of cocaine base between trips to New York, the others would supply him with drugs to sell until the next trip.

On March 18, 1995, White and Frank Fazio traveled to New York by plane, bringing cash for a drug deal; they met Robinson, Jones, and a person known as "Mark" at the airport. The group went to a motel in New Jersey. Fazio stayed at the motel while the others drove to New York City. During the trip, White agreed to buy 15.5 ounces of cocaine base from Mark; Jones and Robinson were present during the transaction. The next day, the entire group went to pick up the cocaine base White had agreed to buy. White's cocaine base was strapped to Fazio's chest with duct tape, as was cocaine base purchased by Jones and Robinson.

4

Jones and Robinson flew back to West Virginia together. Jones gave Fazio a slip of paper with the name "Ralph Fishburn" on it, and told Fazio he had a reservation in that name to fly back to West Virginia. Fazio, Jones, Robinson, and White met during a layover in the Pittsburgh airport, and Jones told Fazio to take a cab to White's house after he arrived in West Virginia. Jones supplied Fazio with cab fare.

In the Charleston, West Virginia, airport, Fazio was stopped by a drug interdiction team that had been looking for him. Fazio identified himself as "Ralph," and consented to a search of his person and his bag. The officers discovered 1009 grams of cocaine base and 59.8 grams of powder cocaine in bags taped to Fazio's body, and they arrested him. The team also stopped Robinson in the airport, but they later released him. The team did not stop Jones.

White was arrested in the airport after the officers searched him and found marijuana. He implicated Jones and Robinson in the conspiracy. White informed the police that Jones lived with his girlfriend, Trina King. He also told officers that Jones usually took King to her job each morning in her white Honda Civic.

The police spotted Jones taking King to work in King's Honda, and arrested him after a high speed car chase. King consented to a search of her apartment. The officers found a Glock semi-automatic handgun, a magazine and ammunition for the gun, a scale, a pager, three rolls of duct tape, $2140 in cash, a vial of marijuana, and several pieces of false identification.

We find that the evidence was sufficient to support Jones's conviction on each of the challenged counts. To support the conspiracy charge in count one, the Government had to prove: (1) existence of a conspiracy, (2) that the defendant knew of the conspiracy, and (3) that the defendant voluntarily became a part of the conspiracy. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996), petition for cert. filed, ___ U.S.L.W. ___ (U.S. Nov. 21, 1996) (No. 96-6868). Agreement to participate in a conspiracy need not be shown by direct evidence, and may be established by viewing the defendant's relationship with the conspirators and the nature of the conspiracy. Id. at 857-58. The evidence clearly established that Jones, White, Robinson, and others worked together to obtain and distribute cocaine. They

5

traveled together to New York on numerous occasions to purchase drugs, and when any of them ran short of drugs between trips they supplied each other with drugs. On occasion, the conspirators enlisted assistance in obtaining drugs for the benefit of the conspiracy. The testimony of the other conspirators established that Jones knew of the conspiracy and voluntarily participated in it. Accordingly, the district court did not err in denying the motion for a new trial on count one.

To support the conviction on count three, the Government had to prove that Jones aided and abetted both possession of drugs and the intent to distribute them. United States v. Williams, 985 F.2d 749, 752 (5th Cir. 1993); United States v. Kelly, 888 F.2d 732, 742 (11th Cir. 1989). Jones's participation in many trips to New York to purchase drugs, along with his conduct in arranging for Fazio to transport Jones's drugs from New York to West Virginia, for distribution by Jones and others in West Virginia, was adequate to support his conviction on count three.

Finally, to support Jones's conviction on count four, the Government had to prove that he aided travel in interstate commerce with the intent to promote unlawful activity, and that the unlawful activity was accomplished or attempted. United States v. Gallo, 782 F.2d 1191, 1194 (4th Cir. 1986); United States v. Tavelman , 650 F.2d 1133, 1140 (9th Cir. 1981). Here, the evidence established that the conspirators traveled by plane from West Virginia to New Jersey, and then by car from New Jersey to New York, for the sole purpose of obtaining drugs for distribution in West Virginia. Further, Jones aided Fazio's interstate travel by making his plane reservation and giving him cab fare so Fazio could transport drugs from New York to West Virginia. The conspirators actually obtained the drugs and transported them to West Virginia. Finally, this was not an isolated incident, but the last of a series of similar drug buying trips to New York. The district court did not err in refusing to grant Jones's motion for a new trial on this count.

We affirm Jones's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

AFFIRMED

6